UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| NATALIE R. SPENCER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:11-CV-26 |
| | ) | (VARLAN/GUYTON) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and

Memorandum in Support  [Docs. 10 and 10-1] and Defendant's Motion for Summary Judgment

and Memorandum in Support [Docs. 13 and 14].   Plaintiff Natalie R. Spencer seeks judicial

review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the

Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On July 16, 2008, the Plaintiff filed an application for a period of disability, disability

insurance benefits, child disability benefits, and supplemental security income, claiming a period

of disability which began on January 1, 1999.  [Tr. 31].   After her application was denied

initially and also denied upon reconsideration, the Plaintiff requested a hearing.  On January 7,

2010, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 46-65].

On January 27, 2010, the ALJ issued an opinion finding that the Plaintiff was not disabled.  [Tr.

31-41]. On May 18, 2010, the ALJ issued an Amended Decision, striking a portion of his opinion and adding certain findings to his decision. [Tr. 9].

The Appeals Council denied the Plaintiff's request for review on November 22, 2010; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 1-5]. The Plaintiff now seeks judicial review of the Commissioner's decision.

I.     **ALJ FINDINGS**

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.

2.  Born on September 27, 1984, the claimant had not attained age 22 as of January 1, 1999, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

3.  The claimant has not engaged in substantial gainful activity since January 1, 1999, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et. seq.*).

4.   The claimant has the following severe impairments: fibromyalgia; bipolar disorder; attention deficit disorder; history of alcohol abuse, in full sustained remission, per claimant's self-report; and history of polysubstance abuse, in full sustained remission, per claimant's self-report (20 CFR 404.1520(c) and 416.920(c)).

5.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she has the following limitations. She can only occasionally climb, balance, stoop, crouch, kneel and crawl. She

2

can understand, remember and perform simple one-step instruction[s] and in certain settings, she can perform some complex tasks. She is able to perform in a nonproduction work setting among few familiar coworkers, with limited public contact, provided routine breaks. She is able to interact appropriately with coworkers and supervisors, respond appropriately to direct nonconfrontational feedback and also to routine, supervision, training, and restructuring for change. She is able to avoid hazards, arrange transportation, and set appropriate goals.

7. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on September 27, 1984 and was 14 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of jobs skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 1999, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

[Tr. 33-41].


## II.      DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.

3

<u>See</u> 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

<u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §

4

404.1520).  Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529.

The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform.  Her

v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S.

137, 146 (1987)).


## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the

correct legal standards and whether the findings of the ALJ are supported by substantial

evidence."  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v.

Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and

his findings are supported by substantial evidence in the record, his decision is conclusive and

must be affirmed.  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C.

§ 405(g).   Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Rogers v. Comm'r of Soc. Sec.,  486 F.3d 234, 241 (6th Cir. 2007)

(quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol.

Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a

different conclusion from that reached by the ALJ, or whether the reviewing judge may have

decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4

(6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice'

within which the Commissioner can act, without the fear of court interference."  Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).  The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses."  Wilson, 378 F.3d at 546-47.  Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard.  See id. at  547.

On review, Plaintiff bears the burden of proving his entitlement to benefits.  Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.     EVIDENCE

The evidence in this case can be summarized as follows.

## A.     Medical Evidence

*1.     Donna Winn, M.D.*

Plaintiff's treatment records with rheumatologist Donna Winn, M.D., date from January 2001 through January 2005.  Following her initial evaluation of the Plaintiff, Dr. Winn described the Plaintiff as a "16 year old white female who has symptoms of fibromyalgia, fatigue out of proportion to her fibromyalgia, symptoms of Sjogren's syndrome and a recent infection with infectious mononucleosis."  [Tr. 294].

At her follow-up visit, the Plaintiff reported that an injection of "Depo Medrol helped her tremendously."  [Tr. 296].  In describing the physical examination of the Plaintiff, Dr. Winn reiterated, "This is marked improvement from her last visit!"  [Tr. 296].  Dr. Winn predicted "that by early fall [of her senior year of high school] she should be able to return to the classroom on a regular basis."  [Tr. 296].

The Plaintiff continued treatment with Dr. Winn, which was marked by both improvement and some regression.  In April 2001, she reported that she was thinking of getting a part-time job and possibly trying out for cheerleading.  [Tr. 297].  In August 2001, the Plaintiff reported that she had obtained a job, which she enjoyed, and "[h]er energy [was] doing pretty well as well."  [Tr. 298].  In November 2001, she reported that she was "fairly tired," but continuing to work.  [Tr. 299].  At a visit in February 2002, the Plaintiff's energy and her ability to sleep had declined, but both later improved, only to later decline again.  [Tr. 301-03].

The Plaintiff presented to Dr. Winn on August 5, 2002, the week before she left for college.  She was reportedly excited about college, but she also asked Dr. Winn to complete a

7

letter stating that she might be eligible for disability benefits. Dr. Winn remarked, "I advised I would be happy to write a letter supporting her disability but I am not sure what that is at this point." [Tr. 303].

Following a visit in December 2002, Dr. Winn explained:

> The patient said she has been having a lot more difficulty. She went off to college and has had a wonderful experience! She joined a sorority and is living in an apartment with her sister, but spends a lot of time in the dorms as well. She said she was just doing very, very well and stopped taking all of her medications including Plaquenil and Vioxx. She said she has done very well until about final time which represents about a 3 month time frame.

[Tr. 305]. Over the next couple of years, her symptoms waxed and waned. [Tr. 306-09].

Plaintiff did not see Dr. Winn between January 2005 and June 2007. When she returned in June 2007, she reported that she had not taken any medication for her physical condition since her last visit, and that she had dropped out of school due to a drinking problem. [Tr. 310]. She had since returned to school and transferred to the University of Tennessee, a school closer to her home. [Tr. 310]. She had plans to also start working as a sales associate. [Tr. 311]. A physical exam showed no edema, normal neck findings, pulses, and gait, and full range of motion everywhere. [Tr. 310]. Plaintiff had unremarkable x-rays and imaging results in June and July 2007. [Tr. 316-17]. After another extended absence from treatment with Dr. Winn between July 2007 and June 2008, Plaintiff again reported not using her prescribed medications. [Tr. 314].

2.    *Kelly Walker, M.D.*

Kelly Walker, M.D., treated Plaintiff's mental health conditions from December 2006 through November 2009. [Tr. 345-70, 444-51]. At her initial visit, the Plaintiff reported that she had withdrawn from school and currently living at Cornerstone half-way house. [Tr. 345].

8

Dr. Walker's records showed some adjustments to Plaintiff's psychotropic medications in her initial visits in December 2006 and January 2007, but otherwise showed she generally maintained the same prescriptions from January 2007 through November 2009. [Tr. 38, 350-60, 444-47]. Aside from an initial January 2007 evaluation showing normal orientation, concentration, appearance, eye contact, speech, memory, thought process, sensorium, insight, and judgment, Dr. Walker's records rarely noted any objective mental status findings. [Tr. 345-70, 379-82, 444-51].

Dr. Walker's treatment notes throughout 2007 and 2008 note that the Plaintiff's depression, stress, and sleep issues would decline and improve periodically. [Tr. 361-72]. Plaintiff initially complained of sleep and drug problems and withdrew from school in November 2007. [Tr. 346-49, 364-67]. Plaintiff also frequently reported having a good mood, sleeping well when she used her medication, and attending college courses and working. [Tr. 361-63, 368-70, 449-51].

In December 2008, Dr. Walker completed a medical assessment form, which provided allowed Dr. Walker to select "none," "mild," "moderate," "marked," or "extreme," to describe the Plaintiff's restrictions in various areas of functioning. Dr. Walker indicated that the Plaintiff had mild to marked problems with her activities of daily living, social functioning, and decompensation; had moderate to marked problems with concentration, persistence, and pace; and had sporadic episodes of decompensation. [Tr. 437].

Dr. Walker affirmed that the Plaintiff's symptoms would interfere with her ability to maintain reliable attendance in a work-setting. [Tr. 437]. Dr. Walker explained, that the Plaintiff "experiences [increased] anxiety in any type of social setting (sporatic) & has had more difficulties over the past years attending school regularly." [Tr. 437]. When asked if the

9

Plaintiff could engage in full-time work, Dr. Walker checked the "no" box. [Tr. 437].

3.     *Reid Bell, M.D.*

Reid Bell, M.D., treated Plaintiff primarily for routine and temporary conditions, such as yeast infections, dermatological complaints, gastrointestinal complaints, and sinus and respiratory problems, during the alleged period of disability. [Tr. 328-34, 337-40, 417-30, 439-40]. Dr. Bell also prescribed medication for attention deficit hyperactivity disorder in 2006, which Plaintiff reported worked well once her prescription was fixed, and anti-depressant medication in October 2006 after complaining of a depressed mood. [Tr. 38, 334-36]. Dr. Bell's records only once noted problems with sleep. [Tr. 329].

In January 2010, Dr. Bell completed a medical assessment form, opining Plaintiff had exertional and postural limitations that amounted to a reduced range of sedentary work. [Tr. 454]. Dr. Bell opined that the Plaintiff required bedrest during a normal workday and could not be expected to reliably work full time. [Tr. 454-55].

4.     *Examining and Reviewing Sources*

On August 14, 2008, the Alice Garland, M.S., examined the Plaintiff for the Tennessee Disability Determination Services. [Tr. 379-82]. Ms. Garland noted the Plaintiff's education history, explaining that the Plaintiff had many credits but they did not equal a degree. [Tr. 380]. The Plaintiff reported that she was to start at the University of Tennessee in the fall and that she lived by herself in an apartment. [Tr. 380]. Ms. Garland found the Plaintiff's thought process to be organized. Her affect was appropriate but her mood seemed "manicky." [Tr. 381]. Plaintiff reported that she took care of all of her household chores, cooked, and shopped for herself, though she sometimes got overwhelmed. [Tr. 381].

10

Ms. Garland found: the Plaintiff's ability to do complex and detailed work was not limited; her ability to persist and concentrate appeared to be moderately limited "under the best circumstances" and markedly limited when a lot of stressors were present; her ability to work with the public appeared to be moderately limited; and her adaptation appeared to be moderately limited. [Tr. 382].

In August 2008, Anita Johnson, M.D., reviewed Plaintiff's medical records and found she retained the abililty to do light work with some postural limitations. [Tr. 384-85, 390]. Dr. Johnson particularly noted the generally unremarkable findings in Dr. Winn's records.

In September 2008, Dr. Lee Coleman reviewed Plaintiff's medical records and found the Plaintiff retained the ability to: understand, retain and perform simple, one-step tasks and instructions and in certain settings, perform some complex tasks; work in a nonproduction work setting among few familiar coworkers, with limited public contact and given routine breaks; interact appropriately with coworkers and supervisors and respond appropriately to direct, nonconfrontational feedback and routine supervision, training, and restructuring for change; and avoid hazards, arrange transportation, and set appropriate goals. [Tr. 413].

B.    **Other Evidence**

At the hearing before the ALJ, Cathy Sanders testified as a vocation expert. The ALJ posed a hypothetical question incorporating the residual functional capacity finding above, supra at 2-3. The ALJ asked if there were jobs in the national and regional economies that a person with such limitations could perform, and Ms. Sanders confirmed that there were jobs that such a person could perform. [Tr. 62].

Counsel for the Plaintiff asked Ms. Sanders if jobs existed in the national and regional economies for a person with mild to marked restrictions on the activities of daily living with

11

sporadic exacerbations and other difficulties. Ms. Sanders responded that if the limitations were marked, there would not be jobs. She clarified that if the limitations were mild there would still be jobs, just in a reduced number. [Tr. 64]

## V.      POSITIONS OF THE PARTIES

The Plaintiff alleges that the ALJ erred by: failing to award disability benefits in light of evidence that she met Listings 12.02, 12.04, 12.06, and 12.09 of 20 C.F.R. 404, Subpart P, Appendix 1; finding the Plaintiff was not disabled despite proof of mental and physical impairments; failing to give proper weight to the opinions of the Plaintiff's treating physicians; confusing the record of the Plaintiff's case with the record of another claimant when issuing his ruling; and failing to provide the Plaintiff a requested hearing transcript prior to issuing notice of the Appeals Council's action.

These allegations of error present, essentially, four arguments in support of remand: (1) the ALJ erred in applying the Listings contained in 20 C.F.R. 404, Subpart P, Appendix 1, to the Plaintiff; (2) the ALJ erred in weighing the evidence in the record; (3) the ALJ erred by citing portions of another claimant's record in his original opinion; and (4) the failure to produce a transcript prior to the Appeals Council decision requires remand.

The Commissioner has responded in opposition to each of the Plaintiff's arguments. The Commissioner maintains that the Plaintiff has not demonstrated that she meets any of the Listings found in 20 C.F.R. 404. The Commissioner argues that the ALJ properly evaluated the medical evidence in the record, including evidence from the Plaintiff's treating physicians, pursuant to 20 C.F.R. § 404.1527(d), 416.927(d). The Commissioner does not dispute that evidence from another claimant's record was discussed in the ALJ's decision. He maintains,

12

however, that the ALJ amended his decision, and remand would not be appropriate. The Commissioner contends that correspondence with Plaintiff's counsel indicated he received a transcript of the hearing in March 2010, and notwithstanding, the remand based on an alleged delay in receiving a hearing transcript would be a waste of administrative and judicial resources.

## VI.    ANALYSIS

The Court will address each of the Plaintiff's allegations of error in turn.

## A.    Application of the Listings Contained in 20 C.F.R. 404, Subpart P, Appendix 1

In regard to application of the Listings, the Plaintiff argues, "Based on the medical records, Natalie R. Spencer has mental disorders, which meet the definitions of Listing Sections 12.02, 12.04, 12.06, and 12.09." [Doc. 10-1 at 19]. The Plaintiff does not state any of the elements of any of the listings, under which she argues the ALJ should have found her disabled. Instead, she argues generally "that all elements of Listing Sections 12.02, 12.04, 12.06, and 12.09 are clearly illustrated by the medical records and her testimony." [Doc. 10-1 at 19].

The Plaintiff's failure to develop her argument by citing any statutory criteria and applying the criteria to her case supports finding the argument waived. See El-Moussa v. Holder, 569 F.3d 250, 257 (6th Cir. 2009) (quoting McPherson v. Kelsey, 125 F.3d 989, 995–96 (6th Cir.1997)) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). As the Court of Appeals for the Sixth Circuit has explained, "It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." Id. (internal quotation marks omitted).

To fulfill the criteria of Listings 12.02, 12.04, 12.06, or 12.09, a claimant must fulfill the "B" criteria, which requires that the claimant demonstrate at least two of the following: marked

13

restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

The ALJ found that the Plaintiff did not demonstrate marked restriction in any two of these areas. [Tr. 34]. In support of this finding, the ALJ noted that the claimant successfully completed a wide variety of daily activities and gave examples of these activities. [Tr. 34]. He noted that she has moderate difficulties in her social functions, but she retains the capacity to interact appropriately and communicate effectively with others. [Tr. 34]. The ALJ also found that the Plaintiff was moderately limited in her ability to concentrate and persist, but he noted that she had performed moderately well academically and was able to complete her housework despite sometimes becoming overwhelmed. [Tr. 35]. In addition, the ALJ found that there was no indication that the Plaintiff had experienced any episodes of decompensation. [Tr. 35]. Thus, the ALJ found that the Plaintiff did not fulfill the "B" criteria, and therefore, she did not met a statutory prerequisite to finding she was disabled under the Listings cited above.

Alternatively, the ALJ found that the Plaintiff did not satisfy the "paragraph C" requirements of the Listings. [Tr. 35].

The Court finds that the Plaintiff has not directed the Court to any evidence or statutory provision that would undermine the ALJ's determination that the Plaintiff did not meet the criteria contained in Listings 12.02, 12.04, 12.06, and 12.09 or that would indicate the determination was not supported by substantial evidence. The Court further finds that the evidence in the record supports finding that the Plaintiff did not meet the criteria of these listings given her ability to function, with only mild to moderate difficulty, in maintaining her own home, in functioning in the workplace, and in performing academically.

14

Accordingly, the undersigned finds that the Plaintiff's allegation of error on this point is not well-taken.

**B.      Weighing the Evidence in the Record**

The Plaintiff next argues that the ALJ erred by failing to consider the combined adverse effect of the multiple severe medically determinable mental and physical impairments on the Plaintiff's ability to engage in substantial gainful activity.  [Doc. 10-1 at 20].  In support of this argument, the Plaintiff cites the Court to the "Medical Assessment of Ability to Do Work-Related Activities" completed by Dr. Bell.  [Doc. 10-1 at 22].  In a related contention, the Plaintiff argues that the ALJ did not follow the treating physician rule by failing to give Dr. Bell and Dr. Walker's responses in the medical assessment forms controlling weight.  [Doc. 10-1 at 24].  The Plaintiff maintains that the ALJ gave only a "sweeping assertion" explaining why he did not fully credit the findings of Dr. Bell and Dr. Walker.  [Doc. 10-1 at 25].

After discussing the treatment notes and findings from Plaintiff's visits with both Dr. Bell and Dr. Walker, at length, [Tr. 38], the ALJ addressed the medical assessment forms completed by the two physicians.  The ALJ explained:

> Dr. Bell submitted a medical assessment form of January 2010, in which he assessed the claimant with the ability to perform less than a full range of sedentary work.  The opinion of a treating physician is entitled to great weight unless there is persuasive contradictory evidence.  Further, a treating physician's medical opinion, on the issue of the nature and severity of impairment is entitled to special significance; and, when supported by objective medical evidence and consistent with other substantial evidence of record, entitled to controlling weight.  Dr. Bell's opinion is inconsistent with the claimant's testimony that she was working part-time at the time of the hearing, and that she was actively seeking more work, which indicates a belief on her part that she can work.  Dr. Bell's opinion is also contradicted by evidence that shows that she was able to work part-time and go to college full-time.  Thus, Dr. Bell's opinion is given little weight.

15

Dr. Walker completed an assessment form in December 2008, in which the treatment provider indicated that the claimant's limitations in activities of daily living and in maintaining social functioning varied from mild to marked, and that her difficulties in maintaining social functioning varied from mild to marked, and that her difficulties in maintaining concentration, persistence, or pace, ranged from moderate to marked, and that the degree of limitation depended on "whether she is maintaining or decompensating with sporadic exacerbation of symptoms.["] Dr. Walker indicated that the claimant persistently experienced depressive and manic signs and symptoms noted in Listing 12.04, concerning affective disorders. Dr. Walker further indicated that Ms. Spencer also had a residual disease process that had resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. However, no weight is given to this opinion, as it is inconsistent with her own treatment notes, which do not show that the claimant has experienced such symptoms for any continuous 12-month period relevant to this decision.

[Tr. 9, 39 (internal citations omitted)].[1]

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion.

---

[1] The Court has substituted the language directed by the ALJ in his Amended Opinion [Tr. 9]. The Court will address whether the inclusion of erroneous information was an error in Section VI, C of this opinion.

20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).

Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). And as the Court of Appeals for the Sixth Circuit has recently reaffirmed, the treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times." Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam).

Initially, the Court would note that the Commissioner has not disputed the status of either Dr. Bell or Dr. Walker as treating physicians, and after reviewing the record, the Court finds that both Dr. Bell and Dr. Walker were the Plaintiff's treating physicians. Because Dr. Bell and Dr. Walker were treating physicians, their opinions as to the nature and severity of an impairment were to be given controlling weight, so long as they were well-supported by medically acceptable clinical and laboratory diagnostic techniques and were not inconsistent with the other substantial evidence in the case record.

As the ALJ noted, Dr. Bell's findings in the medical assessment form were not consistent with the Plaintiff's own reports of her ability to perform work and with her history of employment and school attendance. Among other things, the ALJ noted that Dr. Bell had never made any findings regarding fibromyalgia and that his notes made little mention of fatigue

17

beyond the findings of her sleep study, performed by another medical source.  [Tr. 38].

In regards to Dr. Walker, the ALJ found that Dr. Walker's limitations were not consistent with her own treatment notes.  Dr. Walker, herself, noted that the Plaintiff's conditions were "somewhat managed with medication," on the medical assessment form.  [Tr. 436].  In Dr. Walker's treatment notes, Plaintiff consistently reported feeling stressed out by school [Tr. 364-66], but as the ALJ explained, "except for when she withdrew from her classes in November 2007, she was apparently able to focus and concentrate well enough to obtain good grades, as she testified to having done."  [Tr. 38].

After reviewing the ALJ's discussion of the weight he afforded to the medical opinions in the record and considering the Plaintiff's testimony and pertinent treatment records, the Court finds that the ALJ's determination that Dr. Bell and Dr. Walker's opinions contained in the medical assessment forms were not entitled to controlling weight is supported by substantial evidence.  The extreme mental limitations found by Dr. Walker and the physical limitations found by Dr. Bell were not consistent with the evidence in the record.  As directed by 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), the ALJ gave "good reasons" for the weight given to these treating sources' opinions in his decision.

Moreover, the Court finds that the ALJ's decision to rely on the findings of Dr. Johnson, Dr. Coleman, and the other physical and psychological consultants, who had opined on the Plaintiff's level of impairment, was supported by substantial evidence.  Dr. Johnson's finding that the Plaintiff could perform light work with some postural limits and Dr. Coleman's findings of less severe limitations in the Plaintiff's comprehension, social interaction, and ability to adapt and function were consistent with the Plaintiff's testimony and her self-reported activities.

Accordingly, the undersigned finds the Plaintiff's allegation that the ALJ erred in his

18

treatment of the opinions of Dr. Bell and Dr. Walker, as contained in the medical assessment forms, is not well-taken.

## C.      Citing to Portions of Another Claimant's Record

The Plaintiff also argues that the ALJ erred by "considering testimony and evidence from a claimant other than Ms. Spencer (Ms. Dannettelle)." [Doc. 10-1 at 23].

In support of this allegation of error, the Plaintiff cites the Court to three sentences found on page nine of the ALJ's opinion. [Tr. 39]. The Commissioner does not dispute that "the ALJ evidently included in his January 2010 decision three sentences discussing evidence from another case." [Doc. 14 at 14]. The parties agree that the ALJ notified the Plaintiff on May 18, 2010 that he was amending his decision to remove these sentences and replace them with sentences discussing the evidence in this case. [Tr. 9]. The ALJ amended his decision the same day.

The Plaintiff maintains that, "[a]lthough the ALJ subsequently submitted an amended decision, he still failed to properly and adequately discuss the weight to be given to Dr. Bell's opinions." [Doc. 10-1 at 23].

The Court has considered the Plaintiff's argument, and the Court finds that the ALJ did err in his initial opinion. The Court, however, finds that his error did not constitute reversible error. The ALJ corrected his opinion approximately six months before the Appeals Council issued its denial of review on November 22, 2010. [Tr. 1-5, 9]. As the Court found above, the ALJ's modified opinion contained a discussion of the weight afforded to Dr. Bell's opinion and the reasons for discounting his findings. [Tr. 9, 39]. For the reasons stated above, the Court has found the weight afforded to Dr. Bell's opinion, in the ALJ's opinion and amended opinion, is supported by substantial evidence.

19

To remand this case because the ALJ's initial opinion contained an error would be an unnecessary waste of resources. See, e.g., Slick v. Comm'r of the Soc. Sec., 2009 WL 136890, *3 (E.D. Mich. 2009) (declining to elevate form over substance where a "remand would likely produce little more than an added sentence"); see also United States v. Jackson, 2000 WL 1290360, *2 (6th Cir. 2000) (A court "should decline to correct the error, particularly when a remand, correct in form but purposeless in substance, would involve the needless expenditure of judicial resources at the district court level.").

Accordingly, the undersigned finds that the Plaintiff's allegation that the ALJ committed reversible error by including sentencing relating to another claimant in his initial decision is not well-taken.

**D.     Failure to Provide a Transcript Prior to the Appeals Council Decision**

Finally, the Plaintiff argues that the Appeals Council committed error by failing to provide her with a requested hearing transcript prior to issuing its Notice of Appeals Council Action. [Doc. 10-1 at 24-25].

In support of this position, the Plaintiff quotes portions of a "procedure" developed by the National Organization of Social Security Claimants' Representatives and the Appeals Council. The Plaintiff does not, however, provide the Court with any citation regarding the information provided. Thus, the Court has no way of researching, reviewing, or considering this "procedure." [See Doc. 10-1 at 25].

The Plaintiff herself concedes that the procedure that she references was only recently instituted, and she does not assert that it has retroactive or binding effect on this decision. Further, she has not cited the Court to any cases in which a court has found that the failure to provide a transcript has been found to constitute reversible error.

20

Accordingly, the undersigned finds that the Plaintiff's allegation that the Appeals Council erred by not timely providing a transcript is not well-taken.

## VII.    CONCLUSION

Based on the foregoing, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work, with certain enumerated limitations.  Substantial evidence supports the ALJ's findings and conclusions.  Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 10]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 13]** be **GRANTED**.

Respectfully submitted,

  /s H. Bruce Guyton
United States Magistrate Judge

---

[1]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).